# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| **P.G., a minor student by and through his parents, R.G. and A.G., et al.,** | ) ) ) | |
| **Plaintiffs,** | ) ) | |
| | ) | **NO. 3:17-cv-01115** |
| **v.** | ) | **CHIEF JUDGE CRENSHAW** |
| | ) | |
| **RUTHERFORD COUNTY BOARD OF EDUCATION,** | ) ) ) | |
| **Defendant.** | | |

## <u>MEMORANDUM OPINION</u>

P.G., by and through his parents R.G. and A.G., and each parent individually, bring suit against the Rutherford County Board of Education ("RCBOE"). This case arises out of alleged mistreatment of P.G. by school personnel. Plaintiffs bring suit under (1) the Individuals with Disabilities Education Act ("IDEA"), 20 U.S.C. § 1400 <u>et seq</u>., and the Special Education Behavior Supports Act ("SEBSA"), Tenn. Code Ann. § 49-10-1304, <u>et seq</u>. which is incorporated therein; (2) Title II of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12131 <u>et seq</u>.; (3) Section 504 of the Rehabilitation Act of 1973 ("Section 504"), 29 U.S.C. § 794; and (4) Tennessee common law of negligence. Before the Court is RCBOE's Motion to Dismiss. (Doc. No. 15.) Plaintiffs have responded in opposition (Doc. No. 19) and RCBOE has replied (Doc. No. 22). For the following reasons, the motion will be granted in part and denied in part.

I.    Background[1]

P.G. is a six year old boy with autism and developmental delay. (Doc. No. 13 at ¶ 4.) Running, escaping, or wandering behavior is common to such young children. (Id. at n.1) P.G. has behavioral challenges including limitations on interacting with others, being confrontational, and being non-verbal. (Id. at ¶ 7.) P.G. receives special education services under the IDEA. (Id. at ¶ 4.) P.G. has a "disability" under the ADA and Section 504. (Id.)

In May 2016, P.G.'s teacher at Barfield Elementary School put him in a "mechanical restraint" and fed him crackers in order to keep him still during a preschool graduation ceremony, even though P.G. was not misbehaving. (Id. at ¶ 5.) The mechanical restraints illegally restricted P.G.'s movement and humiliated him. (Id. at ¶ 5 & n.3.)

During the 2016-17 school year, P.G. attended Brown's Chapel Elementary School ("BCES") for kindergarten. (Id. at ¶ 7.) There, because of his disability, "P.G.'s classroom teacher began abusing him." (Id.) This was different than how the teacher treated children who were not confrontational or who were verbal. (Id.) The teacher's aggressive behaviors toward P.G. included "rough handling, scratching or choking his neck." (Id.) On the morning of September 8, 2016, the teacher struck P.G. in the face. (Id. at ¶ 8.) This incident was witnessed by one or more educational assistants who reported it to police and the school. (Id.) P.G.'s parents were called several hours later. (Id.)

The Amended Complaint also alleges that the RCBOE (1) failed to "properly train teachers in handling challenging behaviors," causing emotional and physical injury to P.G; (2) should not

_____

[1] For purposes of the currently pending Motion to Dismiss, all facts in the Complaint are taken as true and viewed in the light most favorable to the Plaintiffs. The Court notes that the Amended Complaint is extremely brief; the following represents essentially all the allegations in the case. (See Doc. No. 13.)

have allowed the teacher to be in the classroom on September 8, 2016, and (3) failed to take remedial measures such as offering counseling or support. (Id. at ¶ 9.)

II.    Legal Standard

The Defendant has not specified which Federal Rule of Civil Procedure it relies upon for dismissal. Many courts have found that, in this situation, "Rule 12(b)(1) is not an appropriate avenue" for dismissal, Gibson v. Forest Hills Local Sch. Dist. Bd. of Educ., 655 F. App'x 423, 430 (6th Cir. 2016) (collecting cases), because the IDEA's exhaustion requirement is waiveable. The Court agrees and finds the proper vehicle for dismissal in this circumstance to be Rule 12(b)(6), not Rule 12(b)(1). Sophie G. v. Wilson Cty. Schs., 265 F. Supp. 3d 765, 768 (M.D. Tenn. 2017).[2]

_____

[2] As this Court explained in Sophie G:

> In certain circumstances, the failure to exhaust administrative remedies can be jurisdictional, meaning that a court lacks subject matter jurisdiction and the power to act further. Maronyan v. Toyota Motor Sales, U.S.A., Inc., 658 F.3d 1038, 1040 (9th Cir. 2011); Tan v. Attorney Gen., 210 F. App'x 169, 170 (3d Cir. 2006); Cave v. E. Meadow Union Free Sch. Dist., 514 F.3d 240, 245 (2d Cir. 2008); M.M. ex rel. D.M. v. Sch. Dist. of Greenville Cty., 303 F.3d 523, 536 (4th Cir. 2002). Nevertheless, the Supreme Court has cautioned that "[n]ot all mandatory 'prescriptions, however emphatic, are . . . properly typed jurisdictional.'" Union Pac. R.R. Co. v. Bd. of Locomotive Eng'rs & Trainmen Gen. Comm. of Adjustment, Cent. Region, 558 U.S. 67, 81 (2009) (citation omitted). Specifically with regard to the IDEA, the Courts of Appeal are not entirely in agreement on whether the failure to exhaust administrative remedies is jurisdictional. Compare Kwai Fun Wong v. Beebe, 732 F.3d 1030, 1037-38 (9th Cir. 2013) (holding that Section 1415(l) is a "claims processing provision" and not jurisdictional) with L.K. v. Sewanhaka Cent. High Sch. Dist., 641 F. App'x 56, 57 (2d Cir. 2016) (stating that the failure to exhaust administrative remedies under the IDEA is jurisdictional and "deprives the court of subject-matter jurisdiction"). For its part, the Sixth Circuit appears not to have definitively resolved the issue, but has "lately broken with its precedent and implied that the IDEA's exhaustion requirement is not jurisdictional in nature." Gibson, 655 F. App'x at 430-31 (collecting cases).

265 F. Supp. 3d at 772. Compare Doe ex rel. Doe v. Dublin City Sch. Dist., 453 F. App'x 606, 609 (6th Cir. 2011) (observing with approval a school district's decision to "rais[e] the [parents'] failure to exhaust administrative remedies as an affirmative defense"), with Metro. Bd. of Pub.

To survive a Rule 12(b)(6) motion, "'a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. (quoting Twombly, 550 U.S. at 557). "If the plaintiffs do not nudge their claims across the line from conceivable to plausible, their complaint must be dismissed." Lutz v. Chesapeake Appalachia, L.L.C., 717 F.3d 459, 464 (6th Cir. 2013) (citation and brackets omitted). Dismissal is likewise appropriate where the complaint, however factually detailed, fails to state a claim as a matter of law. Mitchell v. McNeil, 487 F.3d 374, 379 (6th Cir. 2007).

## III.    Discussion

Defendant contends that Plaintiffs were required to exhaust all of their claims under the IDEA. The outcome of this motion is largely dictated by the Supreme Court's recent opinion in Fry v. Napoleon Community Schools, 137 S. Ct. 743 (2017), which requires that the Court consider the "crux" – the "gravamen" – of the claims in the Amended Complaint to determine whether Plaintiffs seek relief for "denial of the IDEA's core guarantee [of] . . . a free and appropriate education," id. at 748 (quotation marks omitted); if so, then Plaintiffs must exhaust administrative remedies under the IDEA.

### A.    Legal Standards

The purpose of the IDEA is to provide a free and appropriate public education ("FAPE") to "all children with certain physical or intellectual disabilities." 20 U.S.C. § 1412(a)(1)(A); Fry,

---

Educ. v. Guest, 193 F.3d 457, 463 (6th Cir. 1999) (holding that "the district court exceeded its jurisdiction to the extent that it . . . rule[d] upon issues beyond those presented to the ALJ").

137 S. Ct. at 748-49 (citations omitted). "As defined in the Act, a FAPE comprises 'special education and related services' – both 'instruction' tailored to meet a child's 'unique needs' and sufficient 'supportive services' to permit the child to benefit from that instruction." Id. at 748-49 (citing 20 U.S.C. §§ 1401(9), (26), (29)). The IDEA also incorporates state law. See, e.g., 20 U.S.C. § 1412(a)(15)(A). Indeed, a FAPE must "meet the standards of the state educational agency." Id. § 1401(9)(B). Thus, even if a school district complies with federal law, it can still run afoul of the IDEA by violating state law. Doe ex rel. Doe v. Bd. of Educ. of Tullahoma City Schs., 9 F.3d 455, 457 (6th Cir. 1993). Tennessee has a statutory scheme meant to provide "special education services sufficient to meet the needs and maximize the capabilities of children with disabilities." Tenn. Code Ann. § 49–10–101(a)(1). Part of that scheme is the SEBSA. The SEBSA outlines when and how a teacher may restrain a special education student. Id. § 49–10–1304.

"Congress enacted the ADA with the noble purpose of providing a clear and comprehensive mandate for the elimination of discrimination against individuals with disabilities," Melange v. City of Ctr. Line, 482 F. App'x 81, 84 (6th Cir. 2012) (citation and internal quotation marks omitted), by providing that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity," 42 U.S.C. § 12132. Similarly, "Congress sought with [Section] 504 . . . to remedy a broad, comprehensive concept of discrimination against individuals with disabilities," Ability Ctr. of Greater Toledo v. City of Sandusky, 385 F.3d 901, 912 (6th Cir. 2004) (citation and internal quotation marks omitted), by providing that a qualified individual with a disability shall not, "solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance," 29 U.S.C.

§ 794(a). Because the ADA and Rehabilitation Act "contain similar language and are 'quite similar in purpose and scope,'" they are said to be "roughly parallel[ ]." <u>Babcock v. Michigan</u>, 812 F.3d 531, 540 (6th Cir. 2016) (quoting <u>McPherson v. Mich. High Sch. Athletic Ass'n, Inc.</u>, 119 F.3d 453, 459-60 (6th Cir. 1997)). For example, "[e]ach Act allows disabled individuals to sue certain entities, like school districts, that exclude them from participation in, deny them benefits of, or discriminate against them in a program because of their disability." <u>Gohl v. Livonia Pub. Sch. Dist.</u>, 836 F.3d 672, 681 (6th Cir. 2016) (citing <u>Anderson v. City of Blue Ash</u>, 798 F.3d 338, 357 (6th Cir. 2015)). There is "some overlap in coverage" as between the ADA, Section 504, and IDEA's FAPE obligation, and "[t]he same conduct might violate all three statutes." <u>Fry</u>, 137 S. Ct. at 756; <u>see also</u> <u>I.L. through Taylor v. Knox Cty. Bd. of Educ.</u>, 257 F. Supp. 3d 946, 954–55 (E.D. Tenn. 2017) (stating that "[s]ome claims can be brought under the IDEA, the Americans with Disabilities Act, and the Rehabilitation Act," and observing that "conduct by school staff can violate the IDEA, [the ADA], and [Section] 504 all at once").

The IDEA sets forth an administrative mechanism for resolving disputes concerning whether a school has complied. 20 U.S.C. § 1415. It provides for an impartial due process hearing conducted by the state or local educational agency, <u>id</u>. § 1415(f), and the right to appeal the results to the state educational agency if the due process hearing was conducted by the local educational agency, <u>id</u>. § 1415(g). The IDEA also requires parties to use these procedures whenever they seek relief "available under this subchapter" even if they are pursuing relief under other federal laws. <u>Id</u>. § 1415(l). Specifically, the IDEA provides that:

> [n]othing in this chapter shall be construed to restrict or limit the
> rights, procedures, and remedies available under the Constitution,
> the Americans with Disabilities Act of 1990 [42 U.S.C. § 12101 et
> seq.], Title V of the Rehabilitation Act of 1973 [29 U.S.C. § 791 et
> seq.], or other Federal laws protecting the rights of children with
> disabilities, *except that before the filing of a civil action under such
> laws seeking relief that is also available under this subchapter, the
> procedures under subsections (f) and (g) shall be exhausted to the
> same extent as would be required had the action been brought under
> this subchapter.*

Id. § 1415(l) (emphasis added). Thus, a plaintiff who seeks relief available under the IDEA must exhaust his administrative remedies before filing a lawsuit, even if he relies on laws other than the IDEA (such as the ADA or Rehabilitation Act). Once the IDEA's administrative remedies have been exhausted, an appeal can be filed in either federal or state court. The court can then "broadly determine" what relief is appropriate. 20 U.S.C. §1415(i)(2)(B)(iii); Gean v. Hattaway, 330 F.3d 758, 774 (6th Cir. 2003).

Following disagreement among the Courts of Appeals about how the IDEA's exhaustion provision applied to non-IDEA claims, the United States Supreme Court addressed the issue in Fry. In Fry, the plaintiffs alleged, among other things, that their daughter's school district discriminated against her in violation of the ADA, Rehabilitation Act, and state law, when it prevented her from bringing a service dog to school. 137 S. Ct. at 750-52. The Court of Appeals for the Sixth Circuit held that Fry was required to exhaust her IDEA remedies, even though she filed non-IDEA claims. Id. at 752. The Supreme Court reversed, holding that "exhaustion is not necessary when the gravamen of the plaintiff's suit is something other than the denial of the IDEA's core guarantee – what the Act calls a 'free appropriate public education.'" Id. at 748 (quoting 20 U.S.C. § 1412(a)(1)(A)). In reaching this conclusion, the Court noted that the IDEA requires exhaustion only where the plaintiff "'seek[s] relief that is also available' under the IDEA." Id. at 752 (quoting 20 U.S.C. § 1415(l)). "[T]o meet that statutory standard, a suit must seek relief

for the denial of a FAPE, because that is the only 'relief' the IDEA makes 'available.'" Id. The Court explained that "in determining whether a suit indeed 'seeks' relief for [denial of a FAPE], a court should look to the substance, or gravamen, of the plaintiff's complaint." Id.

The Court explained when the gravamen of the complaint is the denial of a FAPE. Specifically, the Court directed courts to consider two hypothetical questions: "First, could the plaintiff have brought essentially the same claim if the alleged conduct had occurred at a public facility that was not a school – say, a public theater or library? And second, could an adult at the school – say, an employee or visitor – have pressed essentially the same grievance?" Id. at 756 (emphasis in original). The Court explained that if the answer to both of these questions is yes, then it is unlikely that the complaint is about the denial of a FAPE. Id. But if the answer to both of these questions is no, then the complaint probably concerns a FAPE.[3] Id.

Thus, under Fry, the Court must focus on the "gravamen of the plaintiff's suit." Id. at 748, 752, 755. This involves not a generalized review, but a claim-by-claim analysis of a complaint. Wellman v. Butler Area Sch. Dist., 877 F.3d 125, 133 (3d Cir. 2017). As the Court of Appeals for the Third Circuit explained in a thoughtful opinion:

---

[3] The Court also noted that "prior pursuit of the IDEA's administrative remedies will often provide strong evidence that the substance of a plaintiff's claim concerns the denial of a FAPE." Fry, 127 S. Ct. at 757.

The word "gravamen" bespeaks concern with both individual claims as well as the collection of claims called a complaint. To apply the Fry test without consideration of the actual claims could result in situations where claims that are included in a complaint because they involve the same parties or course of events but do not involve the provision of a FAPE get swept up and forced into administrative proceedings with claims that are seeking redress for a school's failure to provide a FAPE. Although these administrative proceedings ensure that FAPE claims are first reviewed by agencies with the appropriate subject matter expertise, these agencies do not employ similar expertise when it comes to claims that do not involve the provision of a FAPE. For example, if a student who was challenging the sufficiency of her IEP also happened to be physically assaulted on the bus going to school, one could envision the plaintiff bringing a single complaint with different claims arising from her school experience, one of which seeks relief for physical injuries sustained while on the school bus and which has nothing to do with her access to a FAPE and IDEA relief. Surely the Court would not have envisioned that such a claim would be subject to the IDEA's procedural requirements, nor would subjecting such a claim to these procedural requirements necessarily result in any benefit to either the parties or court reviewing the matter at a later date.

Id. The Court therefore examines each of Plaintiffs' claims individually under the Supreme Court's two-part test.

   B.   Count One – IDEA/SEBSA

Count One alleges the inappropriate and illegal use of physical restraints by P.G.'s teacher on school grounds during a graduation event. (Doc. No. 13 at ¶¶ 10-11.) This claim is expressly brought under the IDEA, but references the SEBSA. (Id.) Multiple courts have found that a complaint regarding restraint conduct seeks the denial of a FAPE and requires administrative exhaustion. See J.L. by and through Leduc v. Wyoming Valley W. Sch. Dist., --- F. App'x ---, No. 16-3727, 2018 WL 798581, at *2 (3d Cir. Feb. 9, 2018) (holding use of restraints on special needs student during transportation to school would not have occurred outside the overall school setting and caused a setback in the student's ability to learn, and concluding under Fry that the complaint thus sought relief under the IDEA and required exhaustion); J.M. v. Francis Howell Sch. Dist.,

850 F.3d 944, 949-50 (8th Cir. 2017) (applying <u>Fry</u>, holding allegations of restraint conduct goes to "support services" under the IDEA and concluding that administrative exhaustion under the IDEA was required for complaint based on school placing student in physical restraints); <u>Rohrbaugh by and through Rohrbaugh v. Lincoln Intermediate Unit</u>, 255 F. Supp. 3d 589, 595-96 (M.D. Pa. 2017); (under a <u>Fry</u> analysis, finding allegations including application of restraints in school cafeteria to require exhaustion under the IDEA); <u>N.S. by & through J.S. v. Tenn. Dep't of Educ.</u>, Case No. 3:16-cv-0610, 2017 WL 1347753, at *11 (M.D. Tenn. Apr. 12, 2017) (finding that, under a <u>Fry</u> analysis, a complaint alleging overuse and misuse of physical restraints concerned denial of a FAPE, but that an independent exception to exhaustion applied);[4] <u>Parrish v. Bentonville Sch. Dist.</u>, No. 5:15-CV-05083, 2017 WL 1086198, at *31 (W.D. Ark. Mar. 22, 2017) (applying <u>Fry</u> and holding administrative exhaustion required for complaint based on physical restraints because "it is clear" that restraint was used as a response to the autistic child's behavior "in the school" ); <u>see also, e.g.</u>, <u>Mallory ex rel. B.M. v. Knox Cty. Sch. Dist.</u>, 2006 WL 3484015, at *6 (E.D. Tenn. Nov. 30, 2006) (in pre-<u>Fry</u> case, holding that "plaintiffs' contention that the use of the restraint system was abusive does not take this case out of the purview of the IDEA," and requiring exhaustion). The common bond between these cases is the recognition that the restraints are particular to the school environment and applied by school officials in the handling of special

---

[4] Plaintiffs cite <u>N.S. by & through J.S.</u> for the proposition that the SEBSA creates obligations "that go beyond the basic scope of the IDEA's requirements." <u>N.S. by & through J.S.</u>, 2017 WL 1347753, at *7 n.4. This is true: "[t]he IDEA has no specific rules about the use of isolation and restraint" and the SEBSA, by contrast, "clearly creates those obligations." <u>Id</u>. But it is of no help to Plaintiffs. The Sixth Circuit has held that "it is settled that even if a school district complies with federal law, it may still violate the [IDEA] if it fails to satisfy more extensive state protections that may also be in place." <u>Doe ex rel. Doe</u>, 9 F.3d at 457. Thus, the SEBSA's restraint provisions are "enforceable under the IDEA." <u>N.S. by & through J.S.</u>, 2017 WL 1347753 at *7 n.4; <u>see also</u> <u>I.L. through Taylor</u>, 257 F. Supp. 3d at 964 (holding SEBSA is enforceable under the IDEA).

needs students. This reasoning is sound. The Court is not persuaded that there is any meaningful distinction here because P.G. happened to be at a school graduation event as opposed to in a classroom, on a school field trip, on a school bus, in the cafeteria, at a school assembly, or elsewhere where the school was acting in loco parentis.[5] The gravamen of Plaintiffs' mechanical restraint claim concerns an action by a teacher in a school setting in an attempt to gain control over a student.

This conclusion is clearly supported by the pair of hypothetical questions provided by the Court in Fry – i.e., whether Plaintiffs could have brought essentially the same claim if the conduct occurred outside of a school and whether an adult at the school could have brought the same claim. Fry, 137 S. Ct. at 756. The answer to both of these questions is no. "[R]estraint techniques are not implemented on adult employees or visitors of the . . . schools, nor are they implemented on minors such as the plaintiffs in other public institutions." N.S. by & through J.S., 2017 WL 1347753 at *11. The conduct alleged in the amended complaint is unique to a disabled student at school, which indicates that "the complaint probably does concern a FAPE, even if it does not explicitly say so." Fry, 137 S. Ct. at 756.

A final indicator that Count One seeks relief for a denial of a FAPE is the Plaintiffs' reference to the illegality of the restraints under Tennessee law that is incorporated into the IDEA. The SEBSA protects children in a school environment. It is in place "to ensure that every student receiving special education services is free from the unreasonable, unsafe and unwarranted uses of isolation and restraint practices [and] encourage the use of positive behavioral interventions and

---

[5] Plaintiffs' statement in the Amended Complaint – added after Defendant introduced its exhaustion defense – that the use of mechanical restraints "did not deny [P.G.] classroom instruction or FAPE . . . because this was . . . a graduation ceremony" (Doc. No. 13 at ¶ 5) is merely a conclusion of law that does not bind this Court. It is also the type of "artful pleading" against which Fry warns. Fry, 137 S. Ct. at 754.

support methods in schools." Tenn. Code Ann. § 49-10-1302. Furthermore, the portion of SEBSA prohibiting the use of mechanical restraints specifically refers to the use of the same on "[a] student receiving special education services, as defined by § 49-10-102." Id. § 49-10-1304. Plaintiffs' use of SEBSA/IDEA standards to define the wrongfulness of the Defendant's conduct supports the conclusion that the gravamen of the amended complaint charges a denial of a FAPE and falls within the purview of the IDEA administrative process. See Rohrbaugh, 255 F. Supp. 3d at 596.

Count One is therefore subject to administrative exhaustion.

C.    Count Two – ADA and Section 504

ADA and Section 504 claims are, after Fry, still subject to the IDEA's exhaustion requirements if they implicate a denial of a FAPE. Fry, 137 S. Ct. at 752 (quoting 20 U.S.C. § 1415(l)); N.S. by & through J.S., 2017 WL 1347753, at *11; K.G. by and through Gosch v. Sergeant Bluff-Luton Cmty. Sch. Dist., 244 F. Supp. 3d 904, 922-23 (N.D. Iowa 2017). Count Two alleges violations of the ADA and Section 504 resulting from "differential treatment based upon the nature of P.G.'s disability." (Doc. No. 13 at ¶¶ 12-13.) Aside from a broad assertion of discriminatory animus, it is not clear from the vague Amended Complaint exactly what claims Count Two encompasses. However, it appears that Count Two may include all of: (1) ongoing abuse during the 2016-17 school year, (2) an isolated strike to the face on September 8, 2016, (3) inadequate training of teachers in handling challenging behaviors and (4) inadequate remedial support measures.

Assuming Count Two implicates all of these allegations, it can be broken out into essentially two classes of claims. The first class of claims are those regarding the failure of the Defendant to properly train P.G.'s school instructors in handling challenging student behaviors and the failure of the Defendant to properly implement remedial measures to provide additional

school support to P.G. These claims, which concern teachers and school support structure, are obviously "directly related to the education [P.G.] received while attending the District's school." Reyes v. Manor Indep. Sch. Dist., 850 F.3d 251, 257 (5th Cir. 2017); see also Wellman, 877 F.3d at 135 (under Fry analysis, finding allegation concerning failure to provide accommodations that would allow student to succeed and remain enrolled in school concern denial of FAPE and foreclosed the conclusion that student could have brought the same complaint against another public facility or that an adult at the school could have brought the same complaint); J.Z. v. New York City Dep't of Educ., 281 F. Supp. 3d 352, 361-62 (S.D.N.Y. 2017) (applying Fry and holding numerous allegations regarding instruction and communication-related modifications and accommodations are not the sorts of claims that could be made outside of discussing the "adequacy of [a student's] education"). In short, these claims concern denial of a FAPE because they implicate the RCBOE's individualized instruction and related support services. The gravamen of these claims is that FAPE-related instruction and services were not properly provided to meet P.G.'s unique needs. These claims do not involve non-discriminatory access to RCBOE schools such that they would be separately cognizable as claims for intentional discrimination under the ADA and Section 504. See, e.g., J.S., III by and through J.S. Jr. v. Houston Cty. Bd. of Educ., 877 F.3d 979, 986 (11th Cir. 2017) (applying Fry and observing that an allegation that a student with a learning disability was not provided remedial support would likely assert a claim only for the denial of a FAPE); Rohrbaugh, 255 F. Supp. 3d at 596 (under Fry, concluding that failure to train allegations directly challenged services provided such that the plaintiffs were "in essence contesting the adequacy of a special needs program"); L.D. v. Los Angeles Unified Sch. Dist., No. 16-cv-8588-MWF(MRWx), 2017 WL 1520417, at *2 (C.D. Cal. Apr. 26, 2017) (relying on Fry and holding

that the complaint was really seeking relief under the IDEA because it alleged that the "level of behavior support" had been inadequate and that defendant failed to address the parents' concerns).

The two-pronged <u>Fry</u> hypothetical supports this reasoning. Plaintiffs likely could not state a viable claim under the ADA or Section 504 against a library or theater based on its failure to train personnel on how to instruct or handle special needs students, or on how to provide special needs school students with counseling or support services. Nor is it likely that an adult could successfully sue a school that refused to provide him with specialized teachers or emotional support, even leaving aside that enrollment in school is limited to children. Despite being pleaded under the ADA and Section 504, Plaintiffs' claims concerning teacher training and remedial measures fall under the umbrella of claims that requires IDEA exhaustion.

The second class of Plaintiffs' ADA and Section 504 claims concerns the physical abuse of P.G. at the hands of his teacher. These claims include allegations about the strike to the face on September 8, 2016, as well as ongoing abuse during the 2016-17 school year. Again, the Court examines these allegations to determine whether the Amended Complaint plausibly alleges claims which only seek "relief for simple discrimination, irrespective of the IDEA's FAPE obligation." <u>Considine-Brechon v. Dixon Pub. Sch. Dist. # 170</u>, Case No. 16-C-50133, 2017 WL 2480751, at *4-5 (N.D. Ill. June 8, 2017) (citing <u>Fry</u>, 127 S. Ct. at 756). The September 8 strike to the face is the most clear. The Supreme Court opined on precisely such a situation:

> [S]uppose that a teacher, acting out of animus or frustration, strikes a student with a disability, who then sues the school under a statute other than the IDEA. . . . Here too, the suit could be said to relate, in both genesis and effect, to the child's education. But the school districts opine, we think correctly, that the substance of the plaintiff's claim is unlikely to involve the adequacy of special education – *and thus is unlikely to require exhaustion*. . . . A telling indicator of that conclusion is that a child could file the same kind of suit against an official at another public facility for inflicting such physical abuse – as could an adult subject to similar treatment by a school official. To be sure, the particular circumstances of such a suit (school or theater? student or employee?) might be pertinent in assessing the reasonableness of the challenged conduct. But even if that is so, *the plausibility of bringing other variants of the suit indicates that the gravamen of the plaintiff's complaint does not concern the appropriateness of an educational program.*

Fry, 127 S. Ct. at 756 n.9 (emphasis added); see also E.H. v. Neal, Case No. 3:16-cv-02605, slip op. (M.D. Tenn. Apr. 16, 2018) (citing Fry and observing that the plaintiffs' ADA and Rehabilitation Act claims based on a single strike to the face of an autistic child allegedly causing psychological harm "focus[ed] on whether [the] strike denied [the student] access to public education programs as opposed to the specific nature or quality of those programs under [the IDEA]"). The Court finds this reasoning remains compelling and concludes that exhaustion was not required for Plaintiffs' ADA and Section 504 claims regarding the September 8 strike.

This leaves the allegations of other physical abuse over an extended period – specifically, "rough handling, scratching or choking [P.G.'s] neck." The Court acknowledges that there are courts that have found that claims involving physical harm in the context of "classroom disciplinary practices" do implicate denial of a FAPE. See, e.g., J.M., 850 F.3d at 949-50 (holding that the plaintiff's claim that the school district imposed physical discipline prohibited by his individualized education program was subject to the IDEA's exhaustion requirements); A.H. by and through H.C. v. Craven Cty. Bd. of Educ., No. 4:16-cv-282-BO, 2017 WL 3493612, at *4 (E.D.N.C. Aug. 14, 2017) (where plaintiffs alleged "incidents of physical abuse" as result of

improper "de-escalation techniques" in classroom, applying <u>Fry</u> and finding that the claims related to the "discipline" of a student, and concluding that exhaustion was necessary because the "state administrative law judges have broad authority under the IDEA to direct appropriate changes to a child's educational program, including the methods used to accommodate disruptive manifestations of his disabilities"); <u>see also</u> <u>Sagan v. Sumner Cty Bd. of Educ.</u>, 726 F. Supp. 2d 868, 882 (M.D. Tenn. 2010) (in pre-<u>Fry</u> case, remanding ADA and Section 504 claims because at least some of the allegations of "not severe" physical injury "constitute[d] discipline and not random acts of violence," and "courts have generally held that claims based upon such conduct fall within the IDEA"); <u>Pullen v. Botetourt Cty. Sch. Bd.</u>, No. 94–686–R 1995 WL 738983, at *4 (W.D. Va. Feb. 13, 1995) (in pre-<u>Fry</u> case, noting that discipline and in-class instruction are related to provision of a FAPE pursuant to the IDEA); <u>Moore by and through Moore v. Harriman City Sch.</u>, No. 92–5572, 16 F.3d 1220 (Table), 1994 WL 18021, at *1 (6th Cir. Jan. 21, 1994) (pre-<u>Fry</u>, stating that "[i]n-class discipline of a handicapped child is a matter within the purview of the [IDEA]"). So if the Amended Complaint contained allegations that the abuse allegedly inflicted upon P.G. was part of a misguided attempt at classroom discipline incorporated into a student's educational program, denial of a FAPE could be implicated and IDEA exhaustion could, perhaps, be necessary.

However, while the Amended Complaint alleges that the physical abuse occurred "because of [P.G.'s] disability," the abbreviated allegations are not tied to P.G.'s individualized education plan, classroom discipline, or enforcement of school special education policies in any way. Rather, they are bare allegations of violence (attributed to discrimination) – in the words of the Amended Complaint, "aggressive and inappropriate behaviors" (Doc. No. 13 at ¶ 7) by the teacher –

untethered from the core of P.G.'s educational program.[6] Accordingly, the Court concludes that the allegations are "beyond the scope of a FAPE . . . in the school context." K.G. by and through Gosch, 244 F. Supp. 3d at 921-22 (applying Fry, finding claims that involved "subjecting [student] to unwarranted and unnecessary physical force" or concerned "unlawful and unreasonable use of physical force" are wrongs beyond the scope of the denial of a FAPE under the IDEA, and excusing exhaustion); Daniels v. Indep. Sch. Dist. No. (0-001) of Oklahoma Cty., Oklahoma, Case No. CIV-17-974-R, 2018 WL 2145009, at *3 (W.D. Okla. May 9, 2018) (noting Fry, concluding that Section 1983 claim based upon allegations of abuse and harassment of autistic student by teacher and students does not allege denial of a FAPE, and finding "no basis for concluding that there is an IDEA claim . . . at issue"); Condit v. Bedford Cent. Sch. Dist., No. 16-cv-6566(CS), 2017 WL 4685546, at *9 (S.D.N.Y. Oct. 16, 2017) (under Fry, differentiating between claims regarding bullying causing trauma (the basis for the plaintiff's suit) that did not require IDEA exhaustion and hypothetical claims that the plaintiff's parents were displeased with the content of the student's education); Hurd v. Clark Cty. Sch. Dist., Case No. 2:16-cv-02011-GMN-NJK, 2017 WL 4349231, at *4 (D. Nev. Sept. 29, 2017) (applying Fry and holding that allegations of physical abuse of three special education students by teacher "does not seek redress for the school's failure to provide a FAPE . . . [and] would be actionable whether the conduct occurred at a non-school public facility or against adults"); Bowe v. Eau Claire Area Sch. Dist., No. 16-cv-746-jdp, 2017

---

[6] Defendant argues that "Plaintiffs' claim essentially deals with how Plaintiff P.G. was physically handled and/or disciplined at school in response to his challenging behaviors, such as being confrontational, running, escaping, and wandering away." (Doc. No. 16 at 17.) This is a conflation of the allegations in the Amended Complaint. The Amended Complaint simply does not allege that P.G. was scratched and choked *as discipline in response to those behaviors*. (See Doc. No. 13, passim.) While the Amended Complaint does allege that people with autism can exhibit those behaviors, it merely alleges that P.G.'s teacher began arbitrarily abusing P.G. because he was disabled (including being non-verbal and unable to report abuse), not for any purported disciplinary or pedagogical purpose. (Id. at ¶ 7.)

WL 1458822, at *5 (W.D. Wis. Apr. 24, 2017) (considering the <u>Fry</u> hypotheticals and determining

that the injuries alleged by the autistic plaintiff, including physical assault, were "a general-purpose

barrier to all of the benefits of school, not just the custom-designed [individualized education

program] that the IDEA provides"); <u>GM by and through Mason v. Lincoln Cty. Sch. Dist.</u>, No.

6:16-cv-01739-JR, 2017 WL 2804996, at *4 (D. Ore. Apr. 21, 2017) (under <u>Fry</u>, where non-verbal

special needs student alleged pain and distress from unequal seclusion, finding that "[w]hile such

treatment could certainly affect the quality of one's education, the harm plaintiff describes could

exist even if his education was top notch. Plaintiff alleges discrimination, not inadequate

individualized educational services, and thus his claims fall outside the IDEA."); <u>see also</u> <u>Moore</u>

<u>v. Kansas City Pub. Schs.</u>, 828 F.3d 687 (8th Cir. 2016) (where student was sexually abused, noting

that references in the complaint to the defendant's failure to address the student's tendency to

wander and vulnerability to suggestion and abuse, does not change the gravamen of the action to

one concerning educational rights or denial of a FAPE); <u>F.H. ex rel Hall v. Memphis City Schs.</u>,

764 F.3d 638, 645 (6th Cir. 2014) (in case involving special needs student who alleged abuse over

a period of time, concluding that where "the gravamen of [the] complaint is the verbal, physical,

and even sexual abuse of [the plaintiff] by his aides," the factual allegations did not implicate the

IDEA); <u>id</u>. at 646 (Kethledge, concurring) ("The gravamen of [the plaintiff's] claim . . . is that this

conduct was an attack upon [his] dignity as a human being. That injury was not remediable by

some change to [his] 'Individualized Education Plan.'"); <u>Muskrat v. Deer Creek Pub. Schs.,</u> 715

F.3d 775, 785 (10th Cir. 2013) (where the plaintiffs alleged "scattered instances of potential

battery" that may have "resulted from simple frustration with [the student] rather than any

legitimate disciplinary goal," finding exhaustion not required and stating "we do not believe the child's parent must request a 'no random violence' clause in the [individualized education plan]").[7]

The Court is persuaded by this latter authority and finds that it is more closely applicable here. However, in recognition that the more nebulous allegations of violence in the classroom are a closer question than the clear September 8 strike, the Court again consults the Supreme Court's guidance. The conclusion that the "gravamen" of the Plaintiff's 2016-17 school year abuse claims is not relief for denial of a FAPE is bolstered by reference to the first of the "clues" identified by Justice Kagan in <u>Fry</u>. 137 S. Ct. at 759. Plainly, Plaintiffs could have brought essentially the same claims for discrimination premised upon unreasonable use of force if the alleged conduct had occurred at a different public facility. <u>Id</u>. Just as plainly, an adult at the school, such as an employee or visitor, could have pressed essentially the same grievances. <u>Id</u>. In these circumstances, it is highly unlikely that these allegations are truly about the denial of a FAPE. <u>Id</u>.; <u>K.G. by and through Gosch</u>, 244 F. Supp. 3d at 922-23. Accordingly, the Court finds that the claims regarding physical abuse over the 2016-17 school year do not require exhaustion.

In sum, the Court finds that the first class of Plaintiffs' ADA and Section 504 allegations require exhaustion, but the second class of those allegations do not.

D.     Exhaustion and Remedies

Plaintiffs' response brief does not explicitly focus on any arguments other than the main contention that Defendant misunderstands <u>Fry</u>. Specifically, Plaintiffs do not argue for any exception to the IDEA's exhaustion requirement, <u>see</u> <u>Honig v. Doe</u>, 484 U.S. 305, 326-27 (1988) and <u>Crocker v. Tenn. Secondary Schs Athletic Ass'n</u>, 873 F.2d 933 (6th Cir. 1989), nor do they

---

[7] While several of these cases are pre-<u>Fry</u>, the Court finds that their holdings are consonant with the Supreme Court's guidelines.

contend that they have actually exhausted any claims. However, although Plaintiffs do not explicitly raise this issue, the response might be read to implicate a concern that the relief Plaintiffs seek may not be fully available in an IDEA hearing. (See Doc. No. 19 at 4 & n.5.) Admittedly, in Fry the Supreme Court left open the question whether "exhaustion [is] required when the plaintiff complains of the denial of a FAPE, but the specific remedy she requests . . . is not one that an IDEA hearing officer may award[.]" Fry, 137 S. Ct. at 752 n.4. Here, the Amended Complaint calls for (1) "appropriate relief" to enable P.G. to "return to [BCES]," including modifications regarding use of restraints, and (2) damages at law. (Doc. No. 13 at ¶¶ 9, 15.) The former is, potentially, relief that is available under the IDEA's administrative scheme (e.g., changes to P.G.'s education plan, implementation of additional support services, etc.). As to the latter, in the absence of a Supreme Court edict, Sixth Circuit precedent requires that the plaintiffs exhaust their administrative remedies and build a record even if the plaintiff seeks certain relief, like money damages, that is unavailable in an IDEA administrative proceeding. See F.H., 764 F.3d at 643 (holding that "[a]ppellants are not excused from exhaustion merely because they request compensatory damages" that an IDEA hearing officer may not award); Covington v. Knox Cty. Sch. Sys., 205 F.3d 912, 916 (6th Cir. 2000) ("[W]e agree with those courts that have decided that a mere claim for money damages is not sufficient to render exhaustion of administrative remedies unnecessary."). Otherwise, plaintiffs could evade the exhaustion requirement simply by appending a claim for money damages. H.C. v. Fleming Cty. Ky. Bd. of Educ., 2017 WL 4249546, at *6 (E.D. Ky. Sept. 25, 2017) (citing F.H., 205 F.3d at 917); see also Sophie G., 265 F. Supp. 3d at 771 (citing S.E. v. Grant Cty. Bd. of Educ., 544 F.3d 633, 642-43 (6th Cir. 2008)); J.B. ex rel. Bailey v. Avilla R-XIII Sch. Dist., 721 F.3d 588, 592 (8th Cir. 2013) (stating that "this court has noted that the IDEA's exhaustion requirement remains the general rule, regardless of whether the

administrative process offers the particular type of relief that is being sought"); Muskrat, 715 F.3d at 785 (holding that "a plaintiff cannot avoid exhaustion simply because he or she asks for damages"); Frazier v. Fairhaven Sch. Comm., 276 F.3d 52, 64 (1st Cir. 2002) (concluding that plaintiffs bringing an IDEA-based claim and who seek only money damages must nonetheless exhaust the administrative process available under the IDEA as a condition precedent to entering a state or federal court); Reyes, 850 F.3d at 256 ("Exhaustion requires more than pleading a claim . . . it requires 'findings and decision' by the administrative body."); N.B. by D.G. v. Alachua Cty. Sch. Bd., 84 F.3d 1376, 1379 (11th Cir. 1996) (holding that plaintiffs cannot avoid the exhaustion requirement by limiting relief to money damages because otherwise, "future litigants could avoid the exhaustion requirement simply by asking for relief that administrative authorities could not grant"). To be clear, Plaintiffs are not excused from exhaustion, where required, on the ground that they have sued for money damages.

E.    Count Three

Count Three alleges common law negligence for RCBOE's alleged violation of a duty of care. (Doc. No. 13 at ¶ 14.) Defendant contends that the Court should decline to exercise supplemental jurisdiction over Plaintiffs' negligence claim because it is a claim that falls under the rubric of the Governmental Tort Liability Act ("GTLA"), which implicates the unique jurisdictional purview of the Tennessee state courts. Plaintiffs have made no argument concerning Count Three in their response brief.

Title 28 U.S.C. § 1367(c) provides that district courts may decline to exercise supplemental jurisdiction over state law claims when they raise novel or complex issues of state law or, in exceptional circumstances, there are compelling reasons for declining supplemental jurisdiction. The GTLA was passed in 1973 to govern claims against governmental entities, such as political

subdivisions of the state, including but not limited to, any municipality, metropolitan government, county, or school district. Tenn. Code Ann. § 29–20–102(3). The GTLA is a comprehensive scheme which governs tort actions against governmental entities, including the RCBOE. See Hill v. Blount Cty. Schs., 2015 WL 729547, at *6 (E.D. Tenn. Feb. 19, 2015); Cruse v. City of Columbia, 922 S.W.2d 492, 496 (Tenn. 1996). The GTLA provides in pertinent part: "[t]he circuit courts shall have exclusive original jurisdiction over any action brought under this chapter. . . ." Tenn. Code Ann. § 29-20-307. This expresses a clear preference from the Tennessee legislature that claims under the GTLA be handled by state courts. Gregory v. Shelby Cty., Tenn., 220 F.3d 433, 446 (6th Cir. 2000), abrogated in part by Buckhannon Bd. & Care Home, Inc. v. W. Va. Dep't of Health & Human Res., 532 U.S. 598 (2001), as stated in DiLaura v. Twp. of Ann Arbor, 471 F.3d 666, 671 n. 2 (6th Cir. 2006); Bluedorn v. Wojnarek, No. 3:07-cv-0839, 2008 WL 4791540, at *12 (M.D. Tenn. Oct. 29, 2008) (collecting cases). "This unequivocal preference of the Tennessee legislature is an exceptional circumstance for declining jurisdiction." Gregory, 220 F.3d at 446. Accordingly, under § 1367(c), the Court will decline to exercise supplemental jurisdiction over Plaintiffs' state law negligence claim against RCBOE. See, e.g., Hill, 2015 WL 729547 at *6 (reaching same conclusion as to negligence-based claims against a county board of education).

IV.    Conclusion

Because the gravamen of certain claims in Counts One and Two of the Amended Complaint seeks relief for denial of a FAPE, the IDEA administrative process is the proper avenue to pursue those claims. In addition, there are compelling reasons to decline supplemental jurisdiction under over Count Three. Accordingly, the Motion to Dismiss (Doc. No. 15) will be **GRANTED IN PART AND DENIED IN PART**. The SEBSA/IDEA claim in Count One shall be dismissed, without prejudice, for failure to exhaust administrative remedies. The ADA and

Section 504 claims in Count Two regarding the failure of the Defendant to (a) properly train P.G.'s school instructors in handling challenging student behaviors and (b) properly implement remedial measures to provide additional school support to P.G. shall be dismissed, without prejudice, for failure to exhaust administrative remedies. Count Three will be dismissed, without prejudice, under 28 U.S.C. § 1367(c).

The remaining ADA and Section 504 claims in Count Two, regarding (a) the September 8 strike and (b) 2016-17 school year physical abuse, will proceed.

An appropriate order will enter.

_____
WAVERLY D. CRENSHAW, JR.
CHIEF UNITED STATES DISTRICT JUDGE